**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE McLEES, | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| COLLABORATIVE SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Stephanie McLees complains about defendant COLLABORATIVE
SOLUTIONS, LLC as follows:

1.      Collaborative Solutions violated Title VII and the Illinois Human Rights
Act by employing a double standard: one set of rules for women, and another, more
permissive set of rules for men. Specifically, it fired Ms. McLees for the actions of a male
colleague, who himself got only a "talking-to."

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331
because this action arises under the laws of the United States.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a
substantial part of the unlawful employment practices occurred in this district.

## FACTS

4.      Defendant Collaborative Solutions is a full service Finance and Human
Resources consulting firm.

5. In February 2019, Collaborative Solutions hired Stephanie McLees to work as an Engagement Manager. Her first day of work was February 19, 2019.

6. Ms. McLees left a similar position at one of Collaborative Solutions' competitors, where she had worked for eleven years, to take the job.

7. While recruiting her, Collaborative Solutions told Ms. McLees, as an enticement to leave her job and join Collaborative Solutions, that it permitted employees to work remotely.

8. Collaborative Solutions assigned Ms. McLees to work for a client named Marmon, located in Chicago, Illinois.

9. Collaborative Solutions assigned a Director level employee, Susanne Cronister, to supervise her work for this client.

10. During February and March, Ms. Cronister provided Ms. McLees with only positive feedback on her work, one time referring to her as a "rock star."

11. Also during this February and March time frame, Collaborative Solutions permitted Ms. McLees to work remotely, from home, and attend meetings by telephone unless specifically required to attend in person.

12. Collaborative Solutions permitted all employees at Ms. McLees level and above to similarly work from home and attend meetings by telephone unless specifically required to attend in person.

13. In March, 2019, Collaborative Solutions assigned Ms. McLees to work on a new project for RaceTrac, a client based in Atlanta.

14.     Collaborative Solutions instructed her to spend only a small portion of her hours per week billing to RaceTrac.

15.     In early April 2019, Collaborative Solutions asked Ms. McLees to travel to Atlanta so she could get to know the RaceTrac employees. Specifically, Collaborative Solutions asked her to attend a "meet and greet" with RaceTrac employees on April 16, 2019.

16.     Collaborative Solutions scheduled her to return to Chicago the following day, on April 17, 2019.

17.     As instructed, Ms. McLees traveled to Atlanta on April 16, 2019 and attended the meet and greet with RaceTrac employees.

18.     After work, a group of Collaborative Solutions employees who worked on the RaceTrac account went out for drinks and dinner.

19.     It was Ms. McLees' birthday and the team celebrated with her.

20.     One of the team members at that birthday celebration was Matt Armstrong, a Vice President at Collaborative Solutions.

21.     Armstrong flirted with Ms. McLees, and encouraged her to celebrate late into the night, buying her shots and generally encouraging her to stay out with him.

22.     When Ms. McLees realized it was almost 3:00 a.m., she told Mr. Armstrong she needed to leave so she could make a client meeting the next morning.

23.     Armstrong pressured Ms. McLees to stay out with him longer – it was clear he was sexually attracted to her – and said he would tell the client he needed her to attend an internal leadership meeting that conflicted with the client meeting.

24.     Since Armstrong was a Vice President and had experience working on the RaceTrac account, and also because she did not want him to be upset with her given his standing with the company and the client, she deferred to his suggestion.

25.     Armstrong then texted an employee at RaceTrac that Ms. McLees would be missing a meeting that morning because she had to attend an internal leadership meeting that conflicted with the RaceTrac meeting. It was approximately 3:18 a.m.

26.     The next day, on August 17, 2021, Ms. McLees attended a noon meeting by telephone and then returned home to Chicago as planned.

27.      Five days later, on April 23, 2019, Vice President Joel Glidden asked Ms. McLee to come to the office, in-person, to meet with him the next day.

28.     During that April 24, 2019 meeting, Glidden told Ms. McLees she was being pulled from the RaceTrac account, and would not be traveling back to Atlanta again, due the "unprofessional client contact" of texting the client at 3:18 a.m. to cancel a meeting.

29.     Glidden further instructed Ms. McLees that she was being assigned to complete an internal project and then make a presentation on it, on which she would be judged.

30.     On May 14, 2019, Ms. McLees made the presentation. She received both positive and constructive feedback from the participants.

31.     Two days later, on May 16, 2019, she was summoned into a meeting with the human resources director, which Collaborative Solutions calls its "People Services" director, where the company told her it was firing her because she was not "a good fit."

4

32.    Collaborative Solutions chose not to fire Armstrong, or even suspend him.

33.    Collaborative Solutions chose to give him only a "talking to about the text."

34.    Collaborative Solutions made several false statements to the EEOC in an attempt to provide a reasonable-sounding pretense for disciplining and firing Ms. McLees while only, in the company's words, "counseling" the much more culpable Armstrong.

35.    First, Collaborative Solutions stated to the EEOC that Ms. McLees was responsible for "conducting" the April 17, 2019 meeting that she attended by phone.

36.    In fact, Ms. McLees was not responsible for leading that call.

37.    Second, Collaborative Solutions stated that Armstrong cancelled the client meeting because he did not believe she was prepared for the meeting.

38.    That is not the reason Armstrong cancelled the meeting.

39.    In fact, the client never indicated to Armstrong that it was upset about the cancellation of Ms. McLees' morning meeting or her attending the noon meeting by phone.

40.    According to Armstrong, he attended morning meetings with the client on April 17, 2019 and "thought everything was ok… Honestly that day wasn't that big of a deal…."

41.    Finally, Collaborative Solutions stated to the EEOC that the decision to fire her was made only after she made her presentation on May 14, 2019.

42.    In fact, Collaborative Solutions began drawing up the termination

paperwork drawn up on or before April 23, 2019.

## COUNT I
### Violation of Title VII – Gender Discrimination

43.     Plaintiff incorporates by reference the paragraphs above.

44.     As described above, Collaborative Solutions discriminated against Ms. McLees based on her sex, female.

45.     Collaborative Solutions acted with malice or with reckless indifference to plaintiff's rights.

46.     Plaintiff suffered harm, including monetary and emotional harm, as a consequence of Collaborative Solutions' actions.

## COUNT II

### Violation of the Illinois Human Rights Act – Gender Discrimination

47.     Plaintiff incorporates by reference the paragraphs above.

48.     As described above, Collaborative Solutions discriminated against Ms. McLees based on her sex, female.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

WHEREFORE, plaintiffs respectfully requests the following relief:

a.      an order finding and declaring that Collaborative Solutions violated Title VII;

b.      an order finding and declaring that Collaborative Solutions violated the Illinois Human Rights Act;

c.      that backpay, front pay and/or lost future earnings be granted to compensate her for her losses;

d.      that compensatory damages be permitted in an appropriate amount as allowed by law;

e.      that punitive damages permitted in an appropriate amount and as allowed by law;

f.      that pre-judgment interest be ordered on the above damages;

g.      that plaintiff be awarded an amount to compensate her for the tax consequences of a lump sum award of damages;

h.      that plaintiff otherwise be awarded make-whole damages;

i.      plaintiff be awarded her costs and reasonable attorney's fees, including any expert witness fees; and

j.      such other relief as is just and proper.

A TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

STEPHANIE McLEES

/s/Johanna J. Raimond
By her Attorney

Johanna J. Raimond
Law Offices of Johanna J. Raimond Ltd.
431 S. Dearborn, Ste. 1002
Chicago, Illinois 60605
Telephone: (312) 235-6959
Fax: (312) 469-8302
jraimond@raimondlaw.com